IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHELL PHOMSOPHA                                                                      PLAINTIFF

v.                            Civil No. 13-2205

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Shell Phomsopha, formerly Heather Poole, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.    Procedural Background:

The plaintiff filed her application for DIB on February 22, 2010, alleging an onset date of September 1, 2001, due to a colon condition, pain, high blood pressure (HBP), depression, and lumbar back pain. Tr. 69. Plaintiff's claim was denied initially and upon reconsideration. Tr. 13. An administrative hearing was then held on December 20, 2012. Tr. 433-455. Plaintiff was present and represented by counsel. At the time of the administrative hearing, plaintiff was 47 years of age and possessed an eleventh grade education. Tr. 436.

On February 28, 2013, the Administrative Law Judge ("ALJ") concluded that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2002. Tr. 15.

Through her date last insured, the ALJ found that Plaintiff had the following medically determinable impairments: hypertension and gastrointestinal disorder (cholecystitis with remote cholecystectomy followed by a revision surgery to repair a bile duct leak in 2001). However, the ALJ determined that neither impairment was severe, whether considered singularly or in combination. Tr. 15. Therefore, he was of the opinion that Plaintiff was not disabled at any time from September 1, 2001, through June 30, 2002. Tr. 18.

The Appeals Council denied Plaintiff's request for review on August 10, 2013. Tr. 3-5. She subsequently filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 18.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence,

and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    A.    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

3

**III. Discussion**:

Of particular concern to the undersigned is the ALJ's determination that Plaintiff did not suffer from a severe impairment prior to her date last insured. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520©). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms. 20 C.F.R. § 404.1508.

The record reveals that Plaintiff was hospitalized July 11-17, 2001, at 37 weeks gestation, with severe flank pain and right upper quadrant pain and findings consistent with acute cholecystitis. Plaintiff had gallstones, but antibiotics were not sufficient to resolve her acute cholecystitis. On July 14, 2001, an urgent cesarean section became necessary. Tr. 173-174.

On August 28, 2001, Plaintiff was again admitted for acute cholecystitis. She reported a history of abdominal pain and anorexia. Ultrasound showed dilated thickened wall gallbladder with cholelithiasis with stones impacted in the neck of the gallbladder. Tr. 175. On August 29, she underwent laparoscopy, but due to an acute inflammatory mass involving the gallbladder, omentum, duodenum, transverse colon, and stomach, Plaintiff's procedure was conferred to an open cholecysteomy with intraoperative cholangiography. She was noted to have a thickened wall and enlarged gall bladder with marked hemorrhagic inflammation. Unfortunately, she experienced post operative complications involving a bile leak. She experienced prolonged and

4

increased Jackson-Pratt drainage, and an endoscopic retrograde cholangiopancreatogramph was conducted on September 4 to localize the leak. The results revealed a blunt obstruction of the distal ductal system for which surgical repair was necessary. Tr. 176. Plaintiff was released on September 4.

Plaintiff was hospitalized from September 5-13, 2001, at the University of Oklahoma Medical Center for a hepatiocojejunostomy with Roux-Y anastomosis, biliary stent change, and choledochocopy. Tr. 233, 236. On September 13, 2001, she was released in stable condition with a T tube in place and was instructed as to maintenance of the T tube. Further, Plaintiff was restricted from heavy lifting greater than 10 pounds for at least one month. Tr. 237. Home health care was set up for maintenance of the T Tube, and she was scheduled to follow up in the general surgery clinic and in radiology in one month to have the T tube changed. Tr. 237.

On September 19, 2001, Plaintiff was seen at St. Edwards ER with febrile illness of indeterminate etiology, probably genitourinary source. She was instructed to return to the ER the following day for reassessment. Tr. 178-179.

On October 10, 2001, Plaintiff returned to the OU Medical Center for a stent change. Tr. 230-232, 268-269. The goal was to upsize with each stent replacement to create a large lumen between the biliary system and the bowel limb. This occurred every six weeks through June 2002. Tr. 224, 225, 226, 227, 228, 253, 255-256, 265, 266, 267. Records reveal that this procedure was "uncomfortable" for the Plaintiff, requiring her to take pain pills "every day and night." Tr. 228. Treatment notes also reveal continued epigastric pain and nausea through at least July 2002, for which Demerol and Phenergan were prescribed. Tr. 224, 225, 253, 255-256.

After reviewing this evidence, it is clear to the undersigned that Plaintiff suffered from complications related to her cholecysteomy that were severe in nature. Accordingly, we find that remand is necessary to allow the ALJ to proceed with steps 3 through 5 of the analysis.

## IV.  Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 11th day of August 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)